Filed 2/15/22  P. v. Mendoza CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GUILLERMO RAMONE MENDOZA,<br><br>    Defendant and Appellant. | B307210<br><br>Los Angeles County<br>Super. Ct. No. TA082475-01 |

APPEAL from an order of the Superior Court of Los Angeles County, H. Clay Jacke II, Judge.  Affirmed.

Robert D. Bacon, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda Lopez and Colleen M. Tiedemann, Deputy Attorneys General, for Plaintiff and Respondent.

————————

Guillermo Ramone Mendoza appeals from the superior court's order denying his petition under Penal Code section 1170.95.[1] That statute allows certain defendants convicted of murder under the felony-murder rule or the natural and probable consequences doctrine to petition the court to vacate their convictions and for resentencing. Here, the trial court—without appointing counsel or inviting briefing—found Mendoza had failed to demonstrate his entitlement to relief. Because the record of conviction establishes Mendoza is ineligible for resentencing as a matter of law, any errors the superior court committed were harmless. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

### 1. *The crimes, convictions, and appeal*

In 2006, the People charged Mendoza, along with his co-defendant Cesar Thomas Banuelos, with the murder of Jose Lujan. The People alleged the defendants committed the crime for the benefit of, at the direction of, or in association with a criminal street gang. The People also alleged that a principal used and discharged a firearm causing Lujan's death.

As the facts of Mendoza's crime are unnecessary for our analysis, we summarize them only briefly.[2]

---

[1] References to statutes are to the Penal Code.

[2] On April 2, 2021, we granted Mendoza's motion to take judicial notice of the record in his direct appeal, *People v. Mendoza* (Aug. 22, 2008, B197580) [nonpub. opn.] (*Mendoza I*). Mendoza seems to object, however, to our consideration of this division's opinion affirming his conviction. As we need only the charges, jury instructions, and verdicts to decide this appeal, we summarize the facts of Mendoza's crime from our 2008 opinion only for the basis of his conviction. (See *People v. Woodell* (1998) 17 Cal.4th 448, 459-460.)

Mendoza, his co-defendant Banuelos, and victim Lujan were all members of the Largo 36 gang. One July night in 2005, Alicia Ochoa heard three "pops" outside her bedroom window. Ochoa lived across the street from a garage apartment occupied by Frances Sandaval. The apartment was a Largo 36 gang hangout. Shortly after the "pops," Ochoa heard fighting, breaking glass, and two more gunshots. She looked out her window and saw a man walking in the driveway of the gang hangout. He left in a white Cadillac. (*Mendoza I.*)

Ochoa then saw Mendoza and another man dragging a body out of the residence to the curb. Mendoza walked over to a couch that was on the street in front of the driveway and put something on it. He opened an iron gate so a car parked in the driveway could leave. The second man drove off in that car. Mendoza went back to the couch, retrieved the item he'd left there, and put it in his waistband. He then headed to a Lincoln parked on the street and drove off. Ochoa called the police. (*Mendoza I.*)

Police found Lujan's body on the curb, wrapped in a blanket, at the end of a trail of blood leading from the garage apartment. Lujan had 13 knife wounds, and he'd been shot in the head three times and in the abdomen once. Two of the wounds "would have been rapidly fatal": a deep stab wound to the neck that severed the jugular vein, and the gunshot to the abdomen, which pierced a number of vital organs. (*Mendoza I.*)

Forensic evidence indicated Lujan was shot in the head three times, then tried to flee. The killers intercepted him and prevented his escape. He was then hit on the head with an 18½ pound porcelain sink; he also was hit at the back of his knees, causing him to fall to the ground. On the ground, he was shot in the abdomen. A blanket was put over his head and he was rapidly and repeatedly stabbed in the neck through

3

the blanket.  Either before or after the stabbing, he again was hit with the sink.  "The attack was almost certainly carried out by two or more persons."  (*Mendoza I*.)

A pair of Mendoza's shoes matched bloody footprints at the scene, and his fingerprint was found on a cup in the residence.  When police arrested Mendoza, his shoes and car also contained small amounts of blood.  (*Mendoza I*.)

At trial, Mendoza's counsel conceded in his opening statement that Mendoza had been there that day and the bloody footprints were his.  Mendoza testified on his own behalf.  Mendoza told the jury that Sandaval and a Largo 36 gang member named Jessie Morales, who lived with Sandaval, killed Lujan.  Mendoza claimed he'd asked them, "[W]hat the fuck are ya'll doing?", adding, "[L]eave him alone."  Mendoza said Sandaval's father pointed a gun at him, and Sandaval suggested they kill him but Morales said no.  (*Mendoza I*.)

The People pursued two alternative theories for first degree murder:  (1) the murder was willful, deliberate, and premeditated; and (2) the murder was committed by lying in wait.  (*Mendoza I*.)  The trial court instructed the jury with, among many other instructions, CALCRIM Nos. 500 (Homicide: General Principles), 520 (Murder with Malice Aforethought), and 521 (Murder: Degrees), as modified.  In the paragraph on willful, deliberate, and premeditated murder, the court told the jury, "The defendant acted *willfully* if [he] intended to kill."  (Italics added.)  In the paragraph on murder by lying in wait, the court listed—among other elements—the defendant "intended to and did make a surprise attack on the person killed."  The court continued, "The lying in wait does not need to continue for any particular period of time, but its duration must show a state of mind equivalent to deliberation and premeditation."

4

The court also instructed the jury on direct aiding and abetting, giving CALCRIM Nos. 400 (Aiding and Abetting: General Principles) and 401 (Aiding and Abetting: Intended Crimes). The court did not give the jury CALCRIM Nos. 402 or 403 on the natural and probable consequences doctrine. The People never alleged felony murder and the court did not instruct the jury on the felony-murder rule. The prosecutor never mentioned natural and probable consequences in his closing argument,[3] nor did he discuss any intended or target crime other than murder. The prosecution's theory was Mendoza and two other men worked together to kill Lujan.

The jury convicted Mendoza of first degree murder and found the gang and "principal discharged a firearm causing death" allegations true.[4] The trial court sentenced Mendoza to a term of 50 years to life. As noted, we affirmed Mendoza's conviction. (*Mendoza I*.)

**2.** ***The section 1170.95 petition***

After Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) took effect, in March 2020 Mendoza filed a document entitled "Petition to Vacate Conviction (under PC 1170.95

---

[3] The prosecutor did quote the language from the discussion of implied malice in CALCRIM No. 520 that "[t]he natural consequences of the act were dangerous to human life." The concept of "natural consequences" in the instruction on implied malice has to do with a defendant's *own* act. It is not the same as the natural and probable consequences doctrine abolished by Senate Bill 1437 which concerns vicarious liability of an aider and abettor for another person's act. (*People v. Daniel* (2020) 57 Cal.App.5th 666, 677, fn. 4 (*Daniel*).)

[4] The jury was unable to reach a unanimous verdict as to Banuelos. (*Mendoza I*.)

Amended, PC 188 Amended and PC 189 Amended)."[5]  The petition stated, "Petitioner was convicted by a jury on 9/26/2006 of first degree murder (PC 187(A)), for the killing of a human being in 2005 and was sentenced to 50 years to life on January 9, 2007, and is currently in state prison serving that sentence." Mendoza "assert[ed] that the prosecution argued a 'theory' during trial that petitioner's actions caused the death of a human being in 2005."  Mendoza asked the court to appoint counsel for him.

Mendoza attached a declaration to his petition stating, "The prosecution [i]n my case argued a felony murder or a natural and probable consequences theory to the court during trial that my actions cause[d] the death of a human being." Mendoza asserted, "I am eligible for relief because I could not now be convicted of 1st degree murder due to the retroactive changes made to Penal Code sections 188 and 189, effective January 1, 2019."

The trial court did not appoint counsel for Mendoza. There is no indication in the record that the prosecution ever filed a response to the petition.  On July 15, 2020, the court issued a memorandum of decision denying Mendoza's petition. The court stated, "The petition is summarily denied because the petitioner is not entitled to relief as a matter of law, for the following reasons:  The appellate opinion affirming the petitioner's conviction and sentence reflects that the petitioner was the actual killer and was convicted of murder on a theory of being the direct perpetrator and not on a theory of felony murder . . . or . . . natural and probable consequences."

---

[5]      Although filed in pro per, the petition appears to have been prepared by counsel.

6

## DISCUSSION

**1.    *Senate Bill 1437***

Senate Bill 1437 took effect on January 1, 2019.  (See Stats. 2018, ch. 1015, § 4.)  It limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure a person's sentence is commensurate with his or her individual criminal culpability.  (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*); *People v. Lewis* (2021) 11 Cal.5th 952, 957, 971 (*Lewis*).)

Senate Bill 1437 amended the felony-murder rule by adding section 189, subdivision (e).  It provides that a participant in the perpetration of qualifying felonies is liable for felony murder only if the person:  (1) was the actual killer; (2) was not the actual killer, but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life as described in section 190.2, subdivision (d).  (See *Gentile*, *supra*, 10 Cal.5th at p. 842.)  It amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

Senate Bill 1437 also authorized, through new section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime.  (See *Lewis*, *supra*, 11 Cal.5th at pp. 959-960; *Gentile*, *supra*, 10 Cal.5th at p. 843.)  A defendant is eligible for relief under section 1170.95 if he meets three

conditions: (1) he must have been charged with murder by means of a charging document that allowed the prosecution to proceed under a theory of felony murder or under the natural and probable consequences doctrine,[6] (2) he must have been convicted of first or second degree murder, and (3) he could no longer be convicted of first or second degree murder due to changes to sections 188 and 189 effectuated by Senate Bill 1437. (§ 1170.95, subd. (a).)

If the section 1170.95 petition contains all the required information, including a declaration by the petitioner that he was convicted of murder and is eligible for relief (§ 1170.95, subd. (b)(1)(A)), section 1170.95, subdivision (b)(3) requires the court to appoint counsel to represent the petitioner, if requested; to direct the prosecutor to file a response to the petition and permit the petitioner to file a reply; and to determine if the petitioner has made a prima facie showing that he is entitled to relief. (See *Lewis*, *supra*, 11 Cal.5th at pp. 959-960.)

In determining whether the petitioner has carried the burden of making the requisite prima facie showing he falls within the provisions of section 1170.95 and is entitled to relief, the superior court properly examines the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) However, "the prima facie inquiry under

---

[6] As discussed below, Senate Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill 775), effective January 1, 2022, amended section 1170.95 in several ways. One of those was to add a third category of eligibility for individuals convicted of murder on a "theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1170.95, subd. (a), added by Stats. 2018, ch. 1015, § 4, as amended by Stats. 2021, ch. 551, § 2.)

subdivision (c) is limited.  Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause." ' . . .[7]  'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid.*; see *Daniel, supra,* 57 Cal.App.5th at p. 675 [any error in denying petition at prima facie stage without appointing counsel is harmless if the record of conviction " 'conclusively demonstrates' " petitioner is ineligible for relief].)

2.      ***The Error in Denying Mendoza's Petition Without Appointing Counsel Was Harmless***

In *People v. Lewis*, *supra*, 11 Cal.5th 952, the Supreme Court, resolving a disagreement among the courts of appeal and agreeing with the analysis in *People v. Cooper* (2020) 54 Cal.App.5th 106, held, once a petitioner files a facially sufficient petition requesting counsel, the superior court must appoint counsel before performing any prima facie review under section 1170.95, subdivision (c):  "[P]etitioners who file a complying petition requesting counsel are to receive counsel upon the filing of a compliant petition." (*Lewis*, at pp. 961-963.)  Because Mendoza tracked the statutory language in his petition (more or less), the superior court erred by denying the petition without first appointing counsel.

---

[7]      The court then holds an evidentiary hearing at which the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing.  (§ 1170.95, subds. (d)(1), (3).)

The *Lewis* Court, however, also held a superior court's failure to appoint counsel to represent a petitioner when assessing whether he has made a prima facie showing of entitlement to relief under section 1170.95, subdivision (c), is state law error only, reviewable for prejudice under the harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818, 836. (*Lewis*, *supra*, 11 Cal.5th at pp. 973-974.)

Here, Mendoza is ineligible for relief under section 1170.95 as a matter of law. To be eligible for resentencing, Mendoza was required to show that he "could not be convicted of first or second degree murder because of changes to Section 188 or 189" made by Senate Bill 1437. (§ 1170.95, subd. (a)(3).)[8] The jury instructions given at Mendoza's trial conclusively demonstrate he cannot make that showing. Where, as here, "no instructions were given on felony murder or murder under the natural and probable consequences doctrine," the defendant is "not '[a] person convicted of felony murder or murder under a natural and probable consequences theory,' and he is therefore ineligible for relief as matter of law." (*Daniel*, *supra*, 57 Cal.App.5th at p. 677. See also *People v. Soto* (2020) 51 Cal.App.5th 1043, 1056 ["potential relief under section 1170.95 extends only to those convicted of murder by operation of the natural and probable consequences doctrine or felony murder"], abrogated in part on another ground by *Lewis*, *supra*, 11 Cal.5th at pp. 962-963; *People v. Tarkington* (2020) 49 Cal.App.5th 892, 899 [jury

---

[8] Senate Bill 775 amended this provision to read, "The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(3), added by Stats. 2018, ch. 1015, § 4, as amended by Stats. 2021, ch. 551, § 2.)

instructions did not include any instruction on natural and probable consequences or felony murder; petitioner was the actual killer], abrogated in part on another ground by *Lewis*, *supra*, 11 Cal.5th at pp. 962-963; *People v. Edwards* (2020) 48 Cal.App.5th 666, 674-675 [counsel not appointed, but absence of jury instructions on felony murder or aider and abettor liability under natural and probable consequences doctrine justified summary denial of petition], abrogated in part on another ground by *Lewis*, *supra*, 11 Cal.5th at pp. 962-963.)

Where the record shows, as a matter of law, that the petitioner was not tried under either of those theories, he necessarily was convicted on a theory that survives the changes to sections 188 and 189 enacted by Senate Bill 1437.  (See *People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 417 [Senate Bill 1437 amended the Penal Code to ensure murder liability is not imposed on a person who was not the actual killer]; *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1157, 1167-1168 [petitioner not entitled to relief where he was convicted as direct aider and abettor].)[9]

---

[9]     As noted, Senate Bill 775 amended section 1170.95 to authorize a resentencing petition by "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine *or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . .*"  (§ 1170.95, subd. (a), italics added, added by Stats. 2018, ch. 1015, § 4, as amended by Stats. 2021, ch. 551, § 2.)  On January 18, 2022, Mendoza's counsel submitted a letter "invit[ing] the Court's attention" to *People v. Langi* (Jan. 12, 2022, A160262) ___ Cal.App.5th ___ [2022 WL 110250] (*Langi*). Langi was one of four men who beat and robbed a group that included victim Martinez, who died after someone in Langi's group punched him, causing him to fall and hit his head.  The prosecution tried the case on a first degree felony murder theory,

11

Noticeably absent from Mendoza's briefs is any discussion of direct aiding and abetting. The parties agree our opinion affirming Mendoza's conviction never said he was the actual killer. But, as the jury was not instructed on any form of accomplice liability other than direct aiding and abetting, its return of a first degree murder verdict demonstrates that, at a minimum, the jury found Mendoza aided and abetted whomever fired the fatal shot and whomever inflicted the fatal stab wound with the necessary intent to kill (if neither of those people was Mendoza). Senate Bill 1437 did not alter the law regarding the criminal liability of aiders and abettors of murder because those

---

but the jury convicted Langi of second degree murder. On direct appeal, the appellate court held the trial court erred in excluding third party culpability evidence, but the error was harmless because the jury could have convicted Langi as a direct aider and abetter. (*Id.* at **1-2.)

Years later, Langi petitioned for resentencing. (*Langi, supra*, 2022 WL 110250 at *2.) The trial court summarily denied his petition, agreeing with the prosecutor that Langi was the actual killer. (*Ibid.*) The court of appeal reversed. (*Id.* at *7.) The court observed "the standard aiding-and-abetting instructions are ill suited to the crime of second degree murder." (*Id.* at *5.) The court concluded an evidentiary hearing was required because the record of conviction did "not conclusively negate the possibility that the jury found [Langi] guilty of second degree murder by imputing to him the implied malice of the actual killer." (*Id.* at *6.)

Here, by contrast, the jury convicted Mendoza of first degree murder. The court's instructions on both of the prosecutor's theories—willful, deliberate, and premeditated murder, and murder by lying in wait—told the jury the prosecution had to prove Mendoza willfully intended to kill or intended to make a surprise attack on the victim with a state of mind equivalent to deliberation and premeditation.

individuals necessarily " 'know and share the murderous intent of the actual perpetrator.'" (*People v. Offley* (2020) 48 Cal.App.5th 588, 595-596.) "One who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law." (*Ibid.*)[10]

Because there is no reasonable probability Mendoza would have obtained a more favorable result had counsel been appointed and given the opportunity to file a memorandum supporting the petition, the court's error in failing to appoint

[10] Mendoza contends there's "a real possibility" he "was convicted under an imputed malice theory," because the trial court gave an older version of CALCRIM No. 400 that told the jury an aider and abettor was "equally guilty" whether he personally committed the crime or aided and abetted the perpetrator who committed it. On direct appeal (represented by the same counsel who represents him in this appeal), Mendoza never challenged that instruction or claimed it subjected him to liability by "imputing to him the culpable mental state of a co-perpetrator." Assuming for argument's sake that such an instructional error—not challenged on appeal—can be raised by a section 1170.95 petition (as opposed, for example, to a petition for a writ of habeas corpus), Mendoza has not cited any testimony or other evidence in the seven-volume record of his trial to support his speculation that the jury imputed to him the "culpable mental state" of Banuelos (whom the jury did not convict) or an uncharged, absent co-perpetrator. The trial court instructed the jury it was required to separately consider the evidence as it applied to each defendant and decide the charge as to each defendant separately (CALCRIM No. 203), and it was not to speculate about other possible perpetrators, but rather to "decide whether the defendants on trial here committed the crime charged" (CALCRIM No. 373). As we have said, by convicting Mendoza of first degree murder, the jury found he intended to kill the victim.

counsel was harmless.  (See *People v. Watson*, *supra*, 46 Cal.2d at p. 836 [an error violating only California law is harmless unless "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error"]; *Daniel*, *supra*, 57 Cal.App.5th at p. 678; *People v. Farfan* (2021) 71 Cal.App.5th 942, 947, 953-956.)

## DISPOSITION

We affirm the superior court's order denying Guillermo Ramone Mendoza's petition to vacate his murder conviction and for resentencing under Penal Code section 1170.95.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P. J.

LAVIN, J.